Good morning, Your Honors. My name is Michael Evans, and I'm appearing today on behalf of the Plaintiffs and Appellants, the Fair Housing Councils of San Diego and the San Fernando Valley. Well, the main issue in this appeal is whether Roommate can assert CDA immunity for its own content, for content that Roommate alone is solely responsible for creating and developing. The statute is clear on this. It provides immunity only for information provided by another information content provider, and not by information created by the ISP itself. Thus, with respect to all of the content challenged in this case that was created and developed exclusively by Roommate, there can be no CDA immunity. And that content would be what? Well, a variety of content. We are focusing in on the various forms that have been used, so I can list them for you. The About Me form. I'm sorry? It's called the About Me form that home seekers are required to fill out as a condition to obtaining Roommate services. That's content provided and created and developed exclusively by Roommate. Okay? That's an example. I don't understand that. Just to make it clear, you're talking about the form itself. The form. The form that says what's your name, what's your address. Okay. What's your sex, what's your familial status. So let me ask you, if I say to you, what is your sex, and you would answer? I would have to go with male. Okay. That would probably be correct. But then the question is, by answering that question, have you expressed any preference at that point for anything to do with housing based on sex or any other characteristics? Well, it's not, the question in the case is not whether I've expressed discriminatory preference. I'm asking you because this is the About Me or About You in the case of our example. But our argument is the blank form itself is the violation, not the response to the form. But Counsel, in Carafano, there were all kinds of pulled down questions that had to be answered, and our court came to a different conclusion than the one you're seeking. How do you distinguish Carafano? Well, as the original panel unanimously found, Carafano is distinguished because in Carafano the questions themselves were not violations of the law. Well, how is it a violation of the law to say what's your sex? Well, we have cited case law on this. There are three cases that we cited. They are Jancic v. HUD, Sewells v. HUD, and one of which, the first is a Seventh Circuit case, the other is a Second Circuit case. You can't run this kind of a service, bottom line, right? Well, that may be the consequence. Isn't that the inevitable consequence of your position, that you cannot run any service that has any structure to it? No, you can have lots of structure. We're all in favor of structure. The difference is you can have protected classifications, race, religion, sex, familial status, disability. And that would leave, what, what's your favorite color or something? I mean, I don't, I guess I'm just having a lot of trouble understanding why the form itself is content. Because the form allows for, as a default, no preference. So whatever preference gets put into the answer is content provided by the user, isn't it? Well, that's a separate question. Whether the answers are roommate content or user content is a separate question from the preliminary question, which is whose content is the form? Now, you would agree with us undoubtedly that the form is roommate's content. It appears that you may disagree with us as to whether that's a violation of the Fair Housing Act. Am I correct in understanding that, for example, saying, will you have sex with me, could be something that violates the law, depending on the context. If you do it on a date, it's probably okay. If you do it in the office to a subordinate, it's probably not okay. So you, what, Context matters. The specific provision we're dealing with here is 3604C. Okay, but let's go back. You never answered my pretty straightforward question. I asked you in the question all about me or all about you, what is your sex? Your sex is male. Is there anything illegal about the question at the point I ask it, were I to be roommates, what is your sex? Yes. And what's illegal about it? The Fair Housing Act, as well as state law, makes it unlawful in connection with the sale and rental of housing to inquire into a home seeker's protected status where those questions would indicate to a reasonable observer that they are part of a system of steering or screening home seekers on account of protected status. So it makes a difference in this case that the purpose of the website is to advertise or to facilitate the acquisition of a rental property. Well, absolutely. So if this was just a, if this was a website having to do with books and the question asked what your sex was, because they may feel that men like violent books more than women or something like that, then you wouldn't be having a problem. Well, it certainly wouldn't be a fair housing problem. Is your problem under Section 3604, is that your claim? 3604 is the basis of our claim. And the claim is to make, print, publish a preference, correct? Well, that is part of what 3604C says. It says, amongst other things, that it is unlawful to make any statement or ask any question that indicates an intention to engage in unlawful discrimination. Where does it say that in 3604C? It says it's unlawful to make any statement that indicates an intention to discriminate. It says that it's unlawful to make a notice statement that indicates any preference. Or an intention. Or limitation or discrimination or intention to make such a preference. Correct? Exactly. But let me go back to Judge Reimer's question. Until a preference is made, the only preference that's made is by the third-party user. Is that not correct? Well, let me try to answer that question. Well, yes or no? No. I have to say no, that we believe that when it takes two to create a discriminatory preference, we're just not willing to concede that only one party is responsible for jointly authored content. Until the person enters the information, or until that person then makes a preference, there is no user profile preference. Is that correct? That is correct. It takes two to create a discriminatory list. It doesn't take two. It takes one. It takes one person to say, this is my preference. I don't think that a preference would be created without roommate's involvement. When you have co-authors, each is necessary. But does the statute prohibit solicitation or encouragement? Is that anywhere in 3604C? Well, remember, the primary focus of our case is that the questions themselves are discriminatory. Now, as to your question as to whether the answers are a violation that can be attributed to roommate, one argument is yes, absolutely. The statute makes it unlawful to cause landlords to indicate discriminatory preferences. So that is not solicitation exactly, but it is comparable. Correct me if I'm wrong, but the district court, I recall, did not rule on the substantive question of law as to whether this violated the Fair Housing Act. It went off on immunity. And what we were asked to decide is whether there is immunity, not whether there is a violation of the Fair Housing Act. That's right. And the relatively straightforward question is whether CDA immunity applies to an ISP's own content, to which the answer inescapably is no. I mean, it may turn out that, as some of the questions have suggested, that none of this winds up violating the Fair Housing Act when you go back and the district court rules on it. It may turn out that way. But that would have nothing to say about whether or not the CDA creates immunity that would prevent the court from looking at those questions. That's your position, isn't it? Yes, sir. I want to follow up on Judge McKeon's question. Let's assume that no one ever answered any questions. Is the very posting of the questions that roommates put up on the Internet a violation from your perspective? Yes, it is. You don't really need two people. You just need one person, in this case roommates, from your perspective. Let me ask you this, which is a follow-up. What you're really asking for is a declaration that roommates is an information provider, because until they're an information provider, they have immunity. How do questions provide information? It seems to me that they're an information provider when you combine the questions and the answers. I'm not sure that's fatal to your position, but I don't see how the questions are information. Well, we care whether you're black. Don't they communicate, we care whether you're black, or we care whether you're gay? Is there a question? What is your race? No, not on this website, no. Thank you. I just want to be sure that we have a clear answer on this. The combination of Judge Fletcher's and my question, I think, is you're saying that whether or not there's an information provider here, the reality is it's your position that roommates' very questions, whether anyone ever answers them, takes it out of the immunity category. Is that correct? Yeah, obviously the questions are asked in the context of users. So we don't have to answer a hypothetical question. What if these questions existed and there were no users? There are users. Right, but just so we break it down into categories here. But before we even get to the answers, just the structure of the questions. The central tenet of our case is that the questions themselves are unlawful. Now, why they're unlawful has to do with the Fair Housing Act. The primary issue is why there's no immunity for them, and that's because they're roommates on contact. To answer your question, Judge Fletcher, I think if it's not information, then the CDA has no application. The CDA only protects users. The reason I'm asking it this way, and I think Judge Smith and I may be on the same page on this one, I think you're making the argument harder for yourself because I'm just looking at the definition of someone who is a content provider, and once you're a content provider, to reiterate, you're not immune. A content provider is, quote, any person or entity responsible in whole or in part for the creation or development of information. So you don't have to say that the questions without the answers. The questions and the answers, then the roommate is responsible in whole or in part for the creation of the information. You're answering a question that's harder and you don't need to answer. Okay. I'm not sure I followed your line of reasoning, but it sounded like it was in my favor. Let me ask the question. It was not just favorable, it was absolutely right. How do you read Judge Fletcher's position right there? Well, the statement right there along with Carafano. Doesn't Carafano undermine that position or that statement? Could you re-articulate your position, Judge Fletcher? Well, my position is fully encapsulated simply by reading the definition of content provider in the statute, which says any person responsible in whole or in part for the creation or development of information. So the roommate is a content provider of its questions. That's our argument. You're saying we don't need to make that argument. I don't think so. Let me ask you this. Roommate takes the answers and then steers them or directs them to certain people. What is the significance of that? Well, that's a core problem, a core violation of the Fair Housing Act. The use of protected status to steer home seekers towards particular housing opportunities is a violation of the Fair Housing Act that is actionable under 3604C, as is the screening that roommates do. Steering home seekers to particular housing opportunities on the basis of their protected status, that's the steering problem and is a serious violation of the Fair Housing Act. In addition, roommate also engages in screening, which is to say rather than pushing home seekers to particular housing opportunities because they are gay or woman or whatever, they also screen you out from housing opportunities through the search mechanism, which is also discriminatory. So if you're a gay guy who wants to live with a straight guy, you can't get that information, unless the straight guy says, I'm willing to live with gay guys. I'm not sure you're completely prohibited from getting access to the information. You'd have to lie. No, I'm not sure that you can't get access to the information, but the steering definitely takes place, which is to say if you're a gay male, you will be steered to particular housing opportunities. You will be encouraged to rent this. You're kind of wrong. It's more impressionable that if you say, I am gay, you will not be shown any listings of people who say, I will not live with gays. There are a variety of things that take place on the website. At the very least, I can say to you, I don't know if every possibility that you're speaking of is eliminated. But at the very least, what we know is, based on your protected status through the email notification system, you will be steered to so-called compatible housing. Well, let me ask you this then. If I accept your premise that the steering, or what you call it, is illegal under the Housing Act, why isn't it four square under Section 230, filtering, screening, choosing, analyzing, et cetera, et cetera, transmitting, displaying, forwarding, why doesn't it come under all of those portions which give immunity to someone who is an interactive computer service? We're using screening in two very different ways. I understand how you're using screening, but we're talking about what the computer is doing. And isn't the computer basically, it's like matchmakers. Instead of setting you up with a date, it sets you up with a roommate, correct? What are your options? Based upon the content provided by the match seeker or the roommate seeker. Well, there's a couple of responses to that. One is, of course, you can choose your date by race or religion or sex or what have you. The housing market, relationships between landlords and tenants are regulated. And you cannot discriminate in a landlord-tenant relationship. And that is what is at issue here. Well, under the Federal Housing Act, you can if you want a roommate. If you have one place to offer, you can say, I want a female roommate. That's not discrimination, correct? This is a complicated question. Well, it shouldn't be. Does that mean that you're going to take down every college bulletin board, every college website that says, I want a female roommate to live in a house of four girls? Is that illegal under the Federal Housing Act? There are some exemptions under a variety of fair housing laws that would apply to the rental of rooms, which is what is at issue here. Most roommate housing has nothing to do with this case. This is a relationship between a landlord and a tenant. Yes, in the context of the rental of rooms. But most of the times when we think of roommates, we think of, for instance, two people getting together and looking for housing. They are co-tenants. This is a landlord-tenant relationship. There is someone who has the right of possession to the premises and rents out a room to somebody. So most roommate relationships are completely outside the Fair Housing Act on that basis. But this website deals with landlord-tenant relationships, the exchange of the right of possession for consideration. That's all the Fair Housing Act applies to. So your comment earlier that just the questions themselves made this illegal is tied to the fact that this is a housing issue. It doesn't apply in any other context. Is that correct? Absolutely. Unless there is a positive law that makes inquiries into protected status unlawful, then you can inquire into protected status. So basically it doesn't just get back to Judge Reimer's initial point that it's not possible to have a site like this because you've got 50 different states, perhaps 50 different statutory schemes, as we pointed out in the CC Bill case involving a slightly different issue. You've got all these people can be looking at the Internet at the same time being affected by different laws because you never know what law you're affecting. As an Internet provider, you're not going to take the chance. You're going to get sued somewhere, so you just don't do it. Is that what you're saying to us? If you're in the business of the rental or sale housing market, you cannot arrange a website around protected classes. Realtor.com, for example, can't require potential homebuyers to disclose their race or sex or national origin and then say... Let's go back, though, to the question I asked you about colleges because basically virtually every college in America runs a roommate service, which basically looks like this. And the comment section certainly looks like those. You write in, you know, 23-year-old sophomore wants... Those would fall outside the Fair Housing Act because they're not landlord-tenant. They would fall outside the Fair Housing Act because they are not landlord-tenant relationships. And what's the difference between my posting on roommates.com and posting on University of California L.A. website? Same thing. If you are the owner of housing and you are posting on a college website, room for rent, yes, this would apply to you. And there are some exemptions, but they are limited. And I could go through and actually prepare a demonstrative exhibit if you'd like it that summarizes the exemptions. It's kind of complicated because you have layers of federal law and layers of state law. But some roommates... The district court never ruled on the Fair Housing Act and neither did the panel. We sent something back for the district court to rule on the first instance. Every college in America that has dormitory housing has a non-discrimination policy. They assign residents... We're not talking about dormitories. We're talking about students who rent apartments. Those are what those housing sites are. Look, you're asking me what is the coverage of the law. I'm telling you the coverage of the law is the rental of housing. Rental requires a landlord and a tenant. The exchange of housing for consideration. So that it's the rental of rooms that's at issue here. Undoubtedly, any number of types of shared housing arrangements would fall outside of the definition of the statute. It depends on the facts of the particular case whether it's a... So if you and I say whether to go out and rent an apartment and share the rent, that would be outside. If I rent an apartment, a two-bedroom apartment or five-bedroom apartment, and I then advertise for people to fill the other bedrooms, I'd be a landlord. That's your position. Right. And unless one of the narrow exemptions apply to you, you would be covered by the law. I'm not Mrs. Murphy, so... My problem, I guess, is that I read Carafano and it says pretty specifically, under Section 230C, therefore, so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process. The fact that some of the content was formulated in response does not alter the conclusion. Doubtless, the questionnaire facilitated the expression. However, the selection of the content was left exclusively to the user. Now, to me, here's what we have. The only way that you would make this change is that rather than an interactive service provider, they become something of an information content. They give the information, but the problem is that we relate to what they do. All you're suggesting is that because it's illegal editing or selection, that it's therefore different? No, sir. We have a couple of responses. First, this case is very different from Carafano because the questions themselves are a violation of the Fair Housing Act. But isn't that the editing or the selecting? No, it's the questions alone. The blank questionnaire, before the user is ever involved in it, is a violation of the law. It is not the answers to the questions. It is the questions. So Carafano is an apposite. It has no application to that portion of the case. This is roommate's own content. As to whether the answers to these questions are subject to immunity, that turns on whether you believe roommate's involvement in the creation of those answers is significant enough for them to be deemed responsible in part for the creation and development of the information. But actually, none of this case, as far as I can tell, has anything to do with editing. In other words, post-creation. With respect to the roommate's own content, it is roommate's own content. CDA has no application. With respect to the answers to the questions, where it is joint content, again, it has nothing to do with editing. It has to do with creation. You have joint authors. Each is necessary. And it's a fact question as to whether roommate's involvement... But why is roommate's necessary? Because it's hosting the site? Well, roommate drafts the discriminatory language, prompts the user to select it. The language is per se discriminatory. And then after the user, the landlord, accedes to the suggestion for the posting of the discriminatory language, compiles a profile, publishes and distributes it. We think that when you write the language, prompt someone to select it, the language is per se discriminatory, that yes, you're substantially involved. Why don't you provide the engine to then take the information and display it according to those supposedly legal preferences? So if they took down a question about sex and they took down a question about children, would it still be illegal in your view? If they eliminate the protected status questions on all their forms, their search mechanism, and then it's just users... I didn't ask you on the search mechanism because we haven't gotten to the comment question. But if they eliminated the two questions, you still think it would be illegal? Essentially, yes. It would be illegal or no? It would be lawful. So then the comments, so then if... Well, that's a separate issue that we concede is a very hard argument for us. So it's caboting that, caboting the comments. So we'll leave them over here. Caboting that tough issue. That's the Reinhardt position. The Reinhardt position. Right, caboting that issue. Obviously, we agree with Judge Reinhardt, but let's put that aside. If you eliminate... Right, all they have, they're perfectly free to have people sort the tenants they're looking for based on cleanliness and pets, anything that's not a protected class. But now we've, let's just say they took out sex and the familial. Well, state law has sexual orientation and age. Well, but we're just taking the state and federal law, and they took out those two questions. Sex, because they don't ask your sexual orientation as a question, do they? No, you're required to disclose your sexual orientation. That's part of our state case, so we haven't really been involved in the briefing because the state claims are not on the field. Right, okay. So then let's say they have eliminated, though, the children and the sex question. Then the person writes in, same deal, I'm a female, and I want a female roommate, and I actually, I don't, I can't have children here. We only have one bedroom, and you're going to sleep on the couch. Is that, would you hold roommates liable if it were to match with somebody else who's a female without children? Well, I don't know how they could do that matching without asking the protected status questions. So if users on their own can figure out a way. They're not asking the question. They're doing the matching based on comment. I'm sorry, I just, I didn't hear you. They're matching based on the comments of the user. Would that be legal or not? I think it would be lawful. This would be the equivalent of my searching on Google for, you know, some, you know, something discriminatory. Google is not responsible. Google is not setting up the protected class as a search component, a search parameter. If you eliminate the protected status questions on the various forms, then it's just users discriminating, and roommate has no responsibility under the standard interpretations. So the comments wouldn't get them into hot water in your view? The comments don't get them into hot water. Even if their computer software can pick up as a tool, female, female, gay, lesbian, children, no children. But I understood from your answers to the previous questions that the sorting process was equally problematic. If the questions were illegal, supposing they weren't illegal, but the sorting process based on the illegalities are equally. That's what I understood to Judge Silverman's question. You can't ask those questions. If you can't collect a home seeker's protected status, you can't sort based on it. So the two are integrally connected. Well, but then that's different than the question, the answer you just gave me. That's right. My question said, let's leave the comments supplied by the user, list, you know, your sex, your children's status, and maybe you even want a Muslim or a Christian roommate or whatever. You're saying, in your view, they would not be protected under Section 230 because the filtering or sorting that would be done. Would be done by the user. If it's just the comment section and you're just doing like a word search. But they need the software to, if they were to make a match and to say, guess what, there's eight other people that have that same criteria. Is that legal or illegal? If they are collecting information on protected status and then screening users by protected status, we would say that's unlawful. But if it's just, if you could just do a word, a keyword search from the comments. It's like searching a list of classified ads. And I could plug in the word white or black or Asian. The host of the site is not responsible. If the site says, we would like to collect your information based on whether you're black or white, and then we would like to allow landlords to search for you based on whether you're black or white, yes, that's a problem. I would like to reserve my one second. You know, you got it. We'll hear from the other side. Good morning, your honors. May it please the court. My name is Timothy Alger. I represent roommate.com. The question before the court, I think, today is, does the imposition of a structure on a bulletin board transform the postings of users? Let's talk about the questions first. Let's talk about the questions first. Okay, roommate says, are you black? I know they don't, but they could, right, under your view. Is that protected under the CDA? Under the CDA? Yes. Are you black? It is protected under the CDA. Are you Jewish? It is protected under the CDA. It's protected under the CDA under BATSL. It's protected because we are operating a site in which we are the publisher on the site, and we can control the content on that site. So you can say if you're black, we don't want to do business with you. If you answer the question black, the next form you get is blank. Thank you very much. We'll talk to you later. There's a different answer then. Because then if we're compelling content, then we fall outside the CDA. We reach the point, I think that there's a spectrum here between a pure bulletin board, a pure conduit on one end, and pure sole authorship on the other end. And the question before the court is, when do you cross that line, and when do you get it? So you're asking the question, are you black does not cross the line, or are you Jewish? Simply. If you said, if you add it to your list of questions, are you black, are you Jewish, just asking that question in the context of finding housing is protected by the CDA. We don't have any questions that say, are you black, are you Jewish. I said that. That's why I said add them to your list of questions. We don't even ask the questions that way, are you white, are you male, or are you female. The question is, there's a drop-down, and you choose male or female. You don't think that's a question? You think picking a drop-down is different from asking a question? Yeah, I think because one could say that the way you phrased it is, that we're kind of sending across a value judgment. We're saying, you know, if you're Jewish, you shouldn't be here. Well, if you don't check the box, you don't get to move to the next box, do you? In your site. In our site, you have to say. It's like one of those things when you fill out the credit card information, if you don't fill in certain lines, you may push send. It'll come back and it'll say, sorry. The way the questioner, I like to describe how the questioner works. The questioner starts out with objective criteria on, what are you looking for in a home? Do you want to live in West Los Angeles, or do you want to live in Orange County? I don't think that's what this case is about, though. I understand, but I just want to put it in context. So it has objective criteria. We really haven't read the record, and you're just wasting time. We've now gotten past all those questions. We've now gotten the questions that really matter for the purpose of this case, and they ask, are you gay? It dropped on many. I'm a gay male. It dropped on male, female, straight, gay. Black, white. Black, white, Jew, Gentile. Or Muslim. You might have it dropped down to a multitude under your hyperbolic. Or LDS, Gentile. Could I get an answer now? Well, we've got the format visualized. If I don't check, wait a minute, let me finish. If I don't check on the sequential drop-down, do I get to move to the next? Do I have the option of not answering the question? We don't have a question like that. Do I have the option of not checking the box? No. Okay, thank you. In other words, you can't play unless you reveal sex, sexual orientation. Right. For me, there's your problem. Or if you wanted to, you said you could add, still protected by the CDA, race. Yes. Or you could add religion. Yes. Or number of children, which you already have. Yes. And CDA will protect you. I think that's allowed under BATSL and the other cases. That is, we are a publisher. We can choose what's on our site. Just like if I publish a magazine, I can choose what I'm going to put in that magazine. Just like landlords used to be able to choose who lives in their houses. You know, there was a time in this country, probably before you remember, but some of us are old enough to remember, when landlords could choose, and you would go through neighborhood after neighborhood where you would see signs. I don't remember the no Irish signs, but I do remember the signs that said no blacks. But here, the question here is – Pretty sad time in this country. The question we have here, Your Honor, is whether we are exercising our right as a publisher to control what's on our site. So we can set up a site and say it's about roommates. If you were the LA Times, could you have separate columns for black housing and separate columns for white housing, separate columns for gay housing, and separate columns for – and then would say, Negroes need not apply, or gays need not apply. Could the LA Times do that? No, they cannot, but they're not protected by the CDA, and we're talking about the CDA. So the CDA is sort of immunity to do things that in the real world nobody can do, but you can do in cyberspace. That's a decision that Congress made, and Congress felt that it was necessary for the enhancement of this forum, and it's been very successful. It has opened the door to a great swath of information that's being exchanged by millions of people as we're speaking. But when it comes down – one of the difficulties is that you do ask these questions. Right. Okay. So then it really boils down to whether the questions are information provided by another information content provider. Isn't that the nut of the whole thing we're trying to figure out? I don't agree with our opposition that the questionnaire itself creates a cause of action under the Fair Housing Act. It's a blank questionnaire. It just says male or female. But that's not before us. Whether or not the questionnaire violates a substantive law is something that we remanded because the district court never ruled on it. The question before us is, are you immune under the CDA? Of course you wouldn't be immune unless there was a violation, so we kind of have it upside down, right? Right. It's entirely possible to say we don't know whether you have a violation, there's an arguable violation, we're going to send you back to consider whether there's a violation, what we're going to tell you is you're not immune. That's – It's entirely – in fact, you deal with the question of immunity before you deal with the question of substantive violation because the whole idea of immunity is you don't have to get into the nitty-gritty of the substantive violation. Can I ask – can I ask you a question that you can answer? Yes. I want to answer – I want to finish the other questions, too. Okay. Well, go ahead. My question is, what's your answer to the other questions? Here's the situation is that when you ask male or female, I'm controlling the content that's going on my site. The blank questionnaire doesn't convey a preference. It doesn't indicate a preference. It doesn't indicate an intent to discriminate at all. It's just male or female. Do you have kids? Do you not have kids? And the choice of content, the formatting of the content that goes on the site, that's a publisher decision. That's a – we're agnostic. We don't choose what the answers are going to be. We don't compel people to say male or female. We don't tell people to say – You do, though. You do because they have to answer the question to move to the next part of the site. It's just that they have to answer the question, not what the answer is, Your Honor. What else is compulsion? I can't buy something on a credit card if I don't fill in the blank. Now, if that's not compulsion, I don't know. And if I can't move – use your website because I don't click on male or female, that's compulsion. But we're not authoring – we're compelling people to answer the question because that's the format of the site. That's what makes the site function. Precisely. Even if you're not compelling it, aren't you developing that information? No, because the choices are being made by the users. I think the answer there is that we're not co-authors. The choices are being made by the users themselves, and the Carafano case resolves that clearly, and that is you have building blocks, but the blocks are chosen by the users. But the user can't choose not to disclose sexual orientation. That choice is made by you. Yes. Why is that a development in response to Judge Silberman's question? Because for the same answer in Carafano, Carafano people had to answer the questions, the multiple-choice questions there as well, because the site functions by the collection of information. And if we're able to say, well, a site loses its CDA protection whenever it creates a structured format that allows for efficient collection and efficient searching of data, they lose their CDA immunity, then it's just going to turn the Internet upside down. However, if, in fact, I read Carafano, it says one of the reasons Matchmaker was given its immunity, Matchmaker was not responsible even in part for associating certain multiple-choice responses with a set of physical characteristics, a group of essay answers, and a photograph. Matchmaker cannot be considered an information content provider because no profile has any content until the user actively creates it. However, in your situation, it seems to me that that's just the opposite. Your questions are so formulated such that one cannot even get in to what one is not. And the profiles are set up different than Matchmaker. You've set the profiles before we even get there. And therefore, I can't come in and get to anything I want to. I only come in and get to what you want me to get to because you have been responsible in part for associating my responses with the set of what you want me to go to. And my profile has already been set up such that it has content even before I create it. And therefore, Carafano does not apply. How do you answer that? Because I went through the questions very carefully with counsel about all of the things that they said about Matchmaker's questionnaire, that editing or selecting. But then the last part of the phrase was that. Your Honor, we provide the structure. There's very little distinction between an open bulletin board for roommates and what we're doing here, and that is a structure. We provide a searchable structure. And opposing counsel, he acknowledged that people are entitled to search through the comments section, like a Google-type search. Well, I don't see the distinction there between giving people the right to search based on formatted information. But they can't even get to the regular, well, tell us anything else you want to get to without going into the profile you want them to get into based on your questions. They don't have to use the site. They're making a choice to use the site. There's other avenues that they could use to look for roommates. They could sleep on the street. Pardon? They could sleep on the street. They could sleep on the street. They could make a choice. But the ability of... Your Honor, they can, you know, the fact of the matter is, as I mentioned before, we're agnostic. People can say whether they're male or female. They can say whether they're straight or gay. They can say whether they have kids or not. But they have to answer. They have to answer. Yeah. So that seems to me, I mean, the question really for me at this point is not whether you're facilitating some illegal activity. The question is whether or not you are an information content provider within the meaning of the statute. And as soon as you say, here are some questions you have to answer, that strikes me as coming within the language responsible in whole or in part for the creation or development of information. I mean, if you said, listen, tell us anything you want to tell, that's a different proposition. But if you say, if you want to be a participant on our site, you have to answer the following questions, I don't see how you get out from under the definition of information content provider. Well, I think the answer, again, is in carafano. People have to go on a website, a dating website. They have to answer questions readily formatted and searchable. Mr. Alter said, give us libelous information. Was there a question like that? No, there was not a question like that. But the CDA is not discriminating as to the content. Is that correct? No, it doesn't. And, in fact, what we're talking about is, are we supposed to inject into the statute a good faith standard? Are we supposed to say, you're only allowed to collect good stuff, non-controversial stuff? Well, it comes back, really, to a statutory interpretation, which everybody here seems to be dancing around instead of looking at the statute. I'm not dancing around. I didn't say you. I've read the statute out loud at least three times. The statute comes back to, and Judge Fletcher, I think, asked you before, is whether your question that gives you also multiple-choice answers, is that the development and whole or part of information? In other words, no immunity for those people. But the question is, what is the actionable content? The actionable content is if there was an indication of preference, and we're not indicating that. Well, see, here's what the problem is, is that we're mixing and matching between the Federal Housing Statute and the CDA. If it were determined that this is no violation, we wouldn't get to immunity. On the other hand, if you get to immunity first, you don't have to figure out if there's a violation. So in answering under the CDA, I don't think you can cross-reference to the Federal Housing Statute. You either do or don't fall under the immunity, correct? Our position is we fall under the immunity. But the immunity, falling under the immunity doesn't have anything to do whether you violate it or didn't violate the statute, correct? That's exactly right. So that's why we have to put the Federal Housing Statute over here. So I don't want to – it doesn't make sense to me, your answer, to try to import. But we didn't mean to be discriminatory. The question is if you are an information content provider as opposed to if what you do is to publish third-party information. That's the central question. We're not the information content provider of the actionable content. The actionable content under the Fair Housing Act, as alleged here, is an indication of a preference. And that is the claim, the indication of a preference. I don't know how you can say that. The landlord expresses a preference, okay? When you are the real estate agent and clients come to you and you say, Are you Jewish? Okay, you are at that point then expressing a preference. They're being asked for information. You as the real estate agent are the conduit of the landlord, and the landlord has expressed a preference for no Jewish tenants. I mean, that's the way it works. How is the roommate exactly in that position? He has a bunch of people who provide housing. They express a preference for – prompted by you, by the way – for having people who are not gay, let's say, or people who don't have children. And then you make sure that they don't get to those things by asking the question. But when you say we make sure that they don't – Isn't that exactly – When you say we make sure they don't get to – that's the users that are making those selections. But isn't the real estate agent saying, I don't want to get my hands dirty by turning people away at the door and saying, Oh, my God, you have sort of big noses. You look like you might be Jewish. I'm going to turn you away. What I'm going to do is I'm going to let the real estate agent politely ask them, before they ever bring them to my door, Excuse me, sir, are you Jewish? Your name Cohen. Is that a Jewish name? And you say, yes. Well, in that case, I'm not going to take you to these people who express a preference. Isn't that exactly what you're doing? You are saying – asking these questions and then keeping people who answer the question in a way that's inconsistent with the preferences of the landlords and keeping them away from those landlords. No, Your Honor, because the preferences are by the users. The users can choose whether they want to live with a woman or a man. Just like the landlords choose whether they want to rent to Jews. But it's the users that are making those selections. The screening cases involve a situation where either the landlord or the broker for the landlord is consciously steering or screening. I have no idea what you're saying. I just don't understand your question. You've got providers of housing who express a preference. No Jews. Okay? That's their preference. Are you saying that the real estate agent who carries out that preference, who screens tenants and says, you, sir, are you Jewish, that real estate agent is not discriminating? I didn't say that at all, Your Honor. Why is that exactly what your client does? You switched over to the fair housing. It is not what my client does. We have a computer system that's agnostic. No, it isn't. Let's talk about agnostic. I'd like to explore that. You said it's not compulsory, we don't ask the question, and you're agnostic. But agnosticism in this context would say that you don't care what they put on. You provide a site which will allow landlords to reach tenants. Then you structure it. So now you're entering into a decision as to what you believe landlords and tenants will want to know about each other. So you have decided, rather than simply putting down name, address, location, et cetera, et cetera, which would be the physical attributes of the property, you are also deciding that there have to be revealed sex, sexual orientation, and children and other things. Now, if you didn't put those aspects into the questionnaire but put it down in the additional comments part, and the users voluntarily, apropos of Judge McKeown's college example, they put down what they chose to put down. I don't want to rent to Jews. I don't want to rent to blacks. I don't want gay people anywhere near my property. And the profile that you generated was based on the above the comments area. It seems to me that would be agnostic. If the search function, like Google or Craigslist or whatever, could reach into the additional comments, we might have come up with these prohibited preferences under the FHA. We might be in a different situation. But you have elevated up into what you have decided is important to the landlord and the prospective tenant. I don't understand how you can say you're agnostic. And to that extent, I think you are creating, you are developing the information for the site. Your Honor, the fact of the matter is anybody – first, we're talking about roommates, and that keeps getting lost here. We are talking about shared housing, and the site is set up for shared housing. And the question – You're getting into FHA questions, and that is a last refuge. Okay. When you can't do it with immunity, you want to say, well, there's no substantive violation. Okay. You have to assume a substantive violation because that's what we've remanded for. Okay. I'll take the challenge. Setting that aside for the moment. Assuming it violates FHA. We – Say it. I assume it violates FHA. Go ahead. Assuming arguendo that it violates the FHA. Okay. A publisher has the prerogative of establishing what's going to go on his site or her site. And that includes formatting. The Batzel case, the Batzel decided – in the Batzel case, a defendant ran a site that solicited information from people about possible stolen art. I understand what Batzel was about. I'm talking about your site. If Batzel could choose what to put on the site, what to send out to people, that's the publisher conduct. Here, as a publisher, we are – Okay. Then you could put out a site that says, you know, landlords, we will publish and people looking for roommates, we will publish the information you believe to be relevant and because we think you almost certainly you're going to want your address and we will give you spaces for that. If you don't want to fill in the address because you prefer to be called on the phone and don't want to put your address down, that's fine. We're providing the service. This will be a place that everybody wants to know if they want to find a place to live, they can go on roommates. That would be like Batzel. That would be, you know, say, are sites dedicated to stolen art? So if you have something related to stolen art, you send it in to us and that's what happened. He sent an email to him. That's not what's going on here. You're structuring exactly what the profile is before you can get to the reason that people want to be on that site. We're providing a structure. Yes, and content. No, we're providing structure. The content is selected by the user. It isn't. I don't have any choice but to tell you that I'm a man. I can lie. I can check the F box because you can't check it. But when you're talking about selecting roommates, that's what's important to people. People want to know whether they're going to be let in. Many of these people are sharing rooms. They're not just sharing rooms. That doesn't matter if under the CDA, they don't care if you're a roommate site or eBay or Craigslist. I thought we already established that if you had immunity under the CDA, it doesn't relate to the content, correct? That's right. So sticking to the CDA then is what BATSL basically says. If you provide the essential published content or CARFANO, if you directly provide the essential published content. So it comes down to Judge Fischer's question. Is a question and an A-B answer published content? Are you then the information content provider by asking a question with an A-B answer? No. Why not? Because the choice of A or B is fine. The A-B answer is prohibited by substantive law. Forget the prohibited. Just answer the question. Now Judge Kaczynski wants to go back to the FHA. I'm trying to stick to the CDA. I'm assuming that it's prohibited. Well, let's assume it isn't. That's what you have to assume. The choice of A or B is the user's choice of A or B. And the search afterwards based on A or B is also another user's choice. And if the choice is illegal under substantive law, it's perfectly okay for you to help the chooser make that choice. You're asking, just asking the question, the posing of the question. Are you a Jew? That's the question. Are you a Jew? And you can ask that question because many landlords want to know that kind of thing. And the answer is? Again, the answer is? The answer is? Are you a Jew, yes or no? Then I would say that that verges on possibly falling outside of the CDA and the protection of the CDA may make you an information provider. Is that like arguably being an information provider? What's the difference between that and sex? Because the way that Judge Kaczynski is setting up the hypothetical is conveying a message that if you are a Jew, you may be excluded. Maybe they'll give you a prize for being a Jew. Pardon? Or maybe they'll give you a prize for being a Jew if you say, yes, maybe you'll get a bonus. You'll get a discount on your rent. We don't know what's on the other side. But you think it's perfectly okay to say, are you a Jew, ask that question as a condition for going to the next step. No, I didn't say that. I said the opposite. I said the opposite. If the question is phrased, if the format, the context is such that the question is conveying a message, then I think that you become a co-author. You may become a co-author and fall outside the scope of the immunity. What is the message? Are you a Jew? Well, again, you're giving it to us in isolation. Questions don't convey messages. I think a question can convey a message if the answer is compelled or there's some result that excludes you in some way. Well, what about this? What is your religion? Jewish, Muslim, Christian, other, Hindu, none of the above? What's the difference between that and Judge Kaczynski's question? I think that the way Judge Kaczynski, again, we don't have the full context, but Judge Kaczynski's question essentially suggests that if you answer a question in a particular way, you are excluded or you cannot use the site. I'm sorry. What is it about the question, are you a Jew, that's any more exclusive or menacing than give us your religion? Because it suggests that if you are a Jew, there's going to be certain consequences from being a Jew. Could be good. Could be bad. Could be good. Could be bad. But I think if you've got... If it's that subject, you know, you might get better service, I don't know. But our site is a neutral drop-down where people can select from multiple choices, and they're either a male or they're a female, and they choose male or female. Well, how do you know that good consequences don't follow if you're a male and bad consequences don't follow if you're a female? Just like, are you a Jew? I mean, is a drop-down menu saying male or female any different from saying, are you a Jew? Isn't that essentially saying, are you a man? If you have a drop-down menu, and drop-down menu gives you two choices, male or female, is that any different from saying, are you female? Are you male? Again, Your Honor, you're setting up a hypothetical without all the answers. What happens then? I'll answer your question if you answer mine. Okay. Okay, it's a deal? I don't know. I don't know. I think I've already answered sufficiently. If your question is set up in such a way that there's some consequence that comes from that yes-no question, then possibly we become an author and co-author. But in your case, there is a consequence. If you answer, I have children, your access to information about housing is limited to people who accept children. So we know these questions are not just for fun. These questions are being asked as a means of channeling people to particular housing. But the channeling is done by other users. You've already given away far more than you – I mean, I don't see how you can win at this point. If you say that there are consequences, how can you possibly win now? But the channeling is done by other users. To the extent that there's any selection being done, it's by other users. Many users don't have a preference. But the issue for immunity is not the consequences. The issue for immunity is whether or not you are an information content provider. And it sounds as though you just provided some information. We gave people a choice. You contributed to the provision of the information. But it's volitional conduct by the user. Volitional only in the sense that you have to answer the question. That kind of volitional. That doesn't sound altogether volitional to me. Well, volitional to come to the site, volitional to answer the question. No, not volitional to answer the question. Because if you don't answer the question, you've got to go home. You can't use it. Well, many sites have upfront requirements. Well, I understand that. And so is yours. And that's why, in my mind, you fall under the definition of a content provider. Okay. But the fact of the matter is simply asking somebody whether they're a man or a woman doesn't violate the Fair Housing Act. It has to be an indication. We want to go back to the Fair Housing Act. I don't know. Third base. Your time's up. You have a second. I will round it up to a minute, mostly in case there are questions from my colleagues. So don't feel like you have to use it all up. Let me just say that I think whether the question is are you a Jew or what is your religion, the consequences are the same. The question is unlawful because the Fair Housing Act makes it unlawful to make inquiries into a protected status. But can we – here's the question I have. Instead of being a rental site, it's Amazon.com, and they ask whether you're male or female. Are they a content provider? The question is their content. Absolutely. So if Amazon.com asks as part of your profile because they want to recommend books, they lose the CDA immunity because they've asked about male, female? There's no immunity for the question. Whether that violates some substance abuse law. So if it violates some credit reporting or any other act, the simple asking of the question, in your view, is content? Yes. So virtually every site that asks questions, for example, that asks opinions that might be defamatory, like if you don't like your service from Chuck E. Cheese, and then you have a Chuck E. Cheese, an anti-Chuck E. Cheese site that's hosted by someone, they would lose CDA immunity, correct? The question would not be subject to CDA immunity, Judge McKeown, but there is no substantive law that makes it unlawful to ask questions. Isn't there a concern that these website providers now have to worry about all of the possible laws that might make any of their questions? Isn't there a preemption? Doesn't the CDA preempt state laws? It does. So these questions about what other states would do or defamation or not is really not covered by the CDA. I'll withdraw the question. It preempts state laws that are not inconsistent. So it doesn't, it's not an absolute. If I can get an answer to my question. The point of the CDA is third-party content. You are absolutely responsible for all of your own content. And, yes, you have to worry that your own content violates some law, absolutely. Thank you. Okay. Thank you, Judge Osagie. We'll stand some minutes. We are adjourned. All rise. This court for this session stands adjourned. Thank you.
judges: Kozinski, Reinhardt, Rymer , Silverman , McKeown, Fletcher , Fisher , Paez , Bea , M. Smith, R. Smith